## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WHITING PETROLEUM CORPORATION, *et al.*,[1] | ) | Case No. 20-20-32021 (DRJ) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Chapter 11 |
| WHITING OIL & GAS CORPORATION, | ) | Adversary Proceeding |
| | ) | No. 20-3196 (DRJ) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BNN WESTERN, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF WHITING OIL & GAS CORPORATION'S
## MOTION FOR SUMMARY JUDGMENT

> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 30 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: Whiting Canadian Holding Company Unlimited Liability Corporation (3662); Whiting Petroleum Corporation (8515); Whiting US Holding Company (2900); Whiting Oil and Gas Corporation (8829); and Whiting Resources Corporation (1218). The location of the debtors' service address is: 1700 Lincoln Street, Suite 4700, Denver, Colorado 80203.

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding under Rules 7001 and 7056 of the Federal Rules of Bankruptcy Procedure, Whiting Oil & Gas Corporation ("Whiting"), a debtor-in-possession in the above-captioned chapter 11 cases, moves for summary judgment. Whiting requests that this Court enter an order, substantially in the form attached hereto, granting summary judgment in favor of Whiting on Counts I–II of the Complaint for Declaratory Judgment [Dkt. 1] (the "Complaint"), and granting such other and further relief as is just and proper.

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................. 3

INTRODUCTION AND SUMMARY OF THE ARGUMENT ..................................... 8

STATEMENT OF FACTS ............................................................................................ 9

I.      THE PRODUCED WATER GATHERING AND DISPOSAL AGREEMENT ............... 9

II.     THE WATER COMMITMENT AGREEMENT ......................................................... 10

III.    REJECTION OF THE WATER AGREEMENTS ......................................................... 12

LEGAL STANDARD ................................................................................................. 12

ARGUMENT .............................................................................................................. 13

I.      COUNTS I AND II OF THE COMPLAINT ARE RIPE FOR SUMMARY
        JUDGMENT BECAUSE PLAINTIFFS SEEK DECLARATORY JUDGMENT
        CONCERNING PURELY LEGAL ISSUES UNDER COLORADO LAW. ................. 14

II.     THE WATER AGREEMENTS DO NOT CREATE COVENANTS RUNNING
        WITH THE LAND UNDER COLORADO LAW. ......................................................... 15

        A.      The Water Agreements Do Not "Touch and Concern" the Land. ....................... 15

                1.      The Water Agreements Relate to Personal Property, Not Real
                        Property, And Thus Do Not Affect Whiting's Interests in the Land. ....... 17

                2.      The Covenants Do Not Directly Affect Whiting's Legal Relations
                        to Its Mineral Interests. ............................................................................ 20

                        a.      The covenant in the PWA does not directly affect
                                Whiting's legal interest in the land. .............................................. 21

                        b.      The obligations in the WCA do not burden or benefit
                                Whiting's interest in the land. ...................................................... 22

                        c.      The covenants in the Water Agreements do not increase
                                BNN's legal interest in the land. ................................................... 25

        B.      BNN and Whiting Are Not in Privity of Estate. ................................................. 25

                1.      Colorado Law Requires Privity of Estate between the Original
                        Covenanting Parties for a Covenant to Run with the Land. ..................... 26

2.    BNN Cannot Establish Horizontal Privity. ................................................. 27

CONCLUSION ........................................................................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Alta Mesa Res., Inc.*,
  613 B.R. 90 (Bankr. S.D. Tex. 2019) ....................................................................15, 18, 19

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ..................................................................................................13

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ..............................................................................................13, 14

*First Nat. Bank of Jackson v. Pursue Energy Corp.*,
  799 F.2d 149 (5th Cir. 1986) ................................................................................8, 13

*Lowell Staats Min. Co. v. Pioneer Uravan, Inc.*,
  596 F. Supp. 1428 (D. Colo. 1984) ...........................................................................13

*In re Sabine Oil & Gas Corp.*,
  547 B.R. 66 (Bankr. S.D.N.Y. 2016), *aff'd*, 567 B.R. 869 (S.D.N.Y. 2017),
  *aff'd*, 734 F. App'x 64 (2d Cir. 2018) ................................................................12, 18, 19, 21

*In re Sabine Oil & Gas Corp.*,
  550 B.R. 59 (Bankr. S.D.N.Y. 2016), *aff'd*, 567 B.R. 869 (S.D.N.Y. 2017),
  *aff'd*, 734 F. App'x 64 (2d Cir. 2018) ................................................................18, 20, 21, 22

*In re Sabine Oil & Gas Corp.*,
  567 B.R. 869 (S.D.N.Y. 2017), *aff'd*, 734 F. App'x 64 (2d Cir. 2018) ...........................18, 25

*In re Sabine Oil & Gas Corp.*,
  734 F. App'x 64 (2d Cir. 2018) .............................................................................27, 30

**State Cases**

*Ad Two, Inc. v. City & County of Denver*,
  9 P.3d 373 (Colo. 2000) .............................................................................................14

*Bd. of County Com'rs of County of Park v. Park County Sportsmen's Ranch, LLP*,
  45 P.3d 693 (Colo. 2002) ............................................................................................19

*Beattie v. State ex rel. Grand River Dam Auth.*,
  41 P.3d 377 (Okla. 2002) (Opala, J., concurring) ....................................................23

*Bigelow v. Nottingham*,
    833 P.2d 764 (Colo. App. 1991), *rev'd in part sub nom. on other grounds*
    *Haberl v. Bigelow*, 855 P.2d 1368 (Colo. 1993)................................................16, 23

*Bill Wolf Petroleum Corp. v. Chock Full of Power Gasoline Corp.*,
    70 Misc. 2d 314, 333 N.Y.S.2d 472 (Sup. Ct. 1972), *aff'd as modified*, 41
    A.D.2d 950, 344 N.Y.S.2d 30 (1973) ...............................................................23, 24

*Brighton Ditch Co. v. City of Englewood*,
    124 Colo. 366, 237 P.2d 116 (1951).........................................................................17

*Chatfield E. Well Co., Ltd. v. Chatfield E. Prop. Owners Ass'n*,
    956 P.2d 1260 (Colo. 1998).......................................................................................19

*Cloud v. Ass'n of Owners, Satellite Apartment Bldg., Inc.*,
    857 P.2d 435 (Colo. App. 1992)..........................................................................15, 22

*Eagle Enterprises, Inc. v. Gross*,
    39 N.Y.2d 505, 349 N.E.2d 816, 384 N.Y.S.2d 717 (N.Y. 1976)....................24, 25

*Farmers' High Line Canal & Reservoir Co. v. New Hampshire Real Estate Co.*,
    40 Colo. 467, 92 P. 290 (1907)...........................................................................15, 26

*Fisk v. Cathcart*,
    33 P. 1004 (Colo. App. 1893)...................................................................................26

*Gerrity Oil & Gas Corp. v. Magness*,
    946 P.2d 913 (Colo. 1997)...................................................................................28, 29

*Hottell v. Farmers' Protective Ass'n*,
    53 P. 327 (Colo. 1898).............................................................................................26

*Lookout Mountain Paradise Hills Homeowners' Ass'n v. Viewpoint Assocs.*,
    867 P.2d 70 (Colo. App. 1993)................................................................................16

*Navajo Dev. Co., Inc. v. Sanderson*,
    655 P.2d 1374 (Colo. 1982)......................................................................................17

*Notch Mountain Corp. v. Elliott*,
    898 P.2d 550 (Colo. 1995)...................................................................................28, 29

*Pulte Home Corp., v. Countryside Cmty. Ass'n, Inc.*,
    382 P.3d 821 (Colo. 2016)........................................................................................14

*Taylor v. Melton*,
    130 Colo. 280, 274 P.2d 977 (1954)..........................................................15, 25, 26, 27

*W. End Irr. Co. v. Garvey*,
   117 Colo. 109, 184 P.2d 476 (1947) ..................................................................17

*Matter of Wimbush's Estate*,
   587 P.2d 796 (Colo. App. 1978) .......................................................................14

*Wood Bros. Homes v. Walker Adjustment Bureau*,
   601 P.2d 1369 (Colo. 1979) (en banc) ..............................................................14

*WRWC, LLC v. City of Arvada*,
   107 P.3d 1002 (Colo. App. 2004) .....................................................................19

**Federal Statutes**

28 U.S.C. § 2201(a) ...............................................................................................14

Bankruptcy Code § 365 ..........................................................................................12

**State Statutes**

Colo. Rev. Stat. § 38-30-121 ..................................................................................26

**Rules**

Federal Rule of Bankruptcy Procedure 7056 ..........................................................12

Federal Rule of Civil Procedure 56(a) ...............................................................12, 13

Federal Rules of Bankruptcy Procedure Rules 7001 and 7056 ................................8

Federal Rules of Civil Procedure Rule 56 ................................................................8

**Other Authorities**

Harry Bigelow, *The Content of Covenants in Leases*,
   12 Mich. L. Rev. 639, 652 (1914) ................................................................16, 20

Restatement (Second) Conflict of Laws ..................................................................14

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

Whiting files this Motion for Summary Judgment under Rule 56 of the Federal Rules of Civil Procedure and Rules 7001 and 7056 of Federal Rules of Bankruptcy Procedure, for entry of an order granting summary judgment in Whiting's favor and against BNN Western, LLC ("BNN"). Whiting and BNN are parties to two agreements concerning water, a Produced Water Gathering and Disposal Agreement and a Water Commitment Agreement (collectively, the "Water Agreements"), in connection with the oil and gas operations of Whiting in Weld County, Colorado. The Produced Water Gathering and Disposal Agreement obligates BNN to gather, transport, and receive produced water generated from Whiting's operations and to dispose this produced water. Under the Water Commitment Agreement, BNN owns freshwater that it acquires from sources other than Whiting and sells that freshwater to Whiting for Whiting's commercial purposes.

As a matter of law, neither of these Water Agreements create covenants running with the land. ***First,*** the Water Agreements do not "touch and concern" the land. Colorado law treats water in possession—like the water at issue here—as personal property. And under Colorado's doctrine of prior appropriation, water in the land is not properly characterized as real property but as a usufructuary right. Because produced water and freshwater acquired from a third party are personal and not real property, the covenants contained in the Water Agreements cannot be covenants running with the land. These covenants additionally do not touch and concern the land because they neither render Whiting's interest in the land more or less valuable, nor do they increase BNN's legal interest. The water in the Water Agreements has been reduced to personal possession and thus does not affect the land. This is all the more true with respect to the Water Commitment Agreement, which concerns water acquired elsewhere by BNN; Whiting is agnostic as to where that water is sourced from so long as it has freshwater for its operations.

*Second*, the Water Agreements do not satisfy the required element of horizontal privity. The covenants are not contained in a grant of real property interest in the allegedly burdened mineral estate.

Because BNN cannot establish that *either* of these separate and independent elements are satisfied, Whiting is entitled to summary judgment.

## STATEMENT OF FACTS

Whiting is party to two water-related agreements with BNN: a Produced Water Gathering and Disposal Agreement and the Water Commitment Agreement.[2] The pertinent provisions of the agreements are addressed in further detail below.

## I.   THE PRODUCED WATER GATHERING AND DISPOSAL AGREEMENT

On December 16, 2015, Whiting and BNN entered into the Produced Water Gathering and Disposal Agreement (together with all amendments, the "PWA"). A true and correct copy of the PWA is attached to the Complaint as **Exhibit 1**. ███████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████

As its name suggests, the PWA relates to *produced water* only, not oil and gas. The PWA recites that BNN is obligated ███████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████

---

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the applicable agreement.

The  PWA ███████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████

Whiting is obligated to ████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████

On October 31, 2017, Whiting and BNN entered into the Amendment to Produced Water Gathering and Disposal Agreement (the "PWA Amendment"). A true and correct copy of the PWA Amendment is attached to the Complaint as **Exhibit 2**. ██████████████████████████

████████████████████████████████████████████████████

███. The PWA Amendment does not otherwise affect Whiting's obligation to fulfill its Minimum Monthly Volume Commitment under the PWA. *See id.* § 3.

The PWA is "governed by, construed, enforced and performed according to the Laws of the State of Colorado without regard to principles of conflicts of Law." Complaint, Ex. 1, § 18.8.

## II.    THE WATER COMMITMENT AGREEMENT

On December 16, 2015, Whiting and BNN entered into the Water Commitment Agreement (together with all amendments, the "WCA"). A true and correct copy of the WCA is attached to the Complaint as **Exhibit 3**.

The WCA also relates only to water, not oil and gas. ███████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████

Under the WCA, ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████

On October 31, 2017, Whiting and BNN entered into the Amendment to Water Commitment Agreement (the "WCA Amendment"). A true and correct copy of the WCA Amendment is attached to the Complaint as **Exhibit 4**. ████████████████████████

■ The WCA Amendment does not otherwise affect Whiting's obligation to fulfill its Contractual Monthly Minimum obligation under the WCA. *See id.* § 2.

The WCA is "governed by, construed, enforced and performed according to the Laws of the State of Colorado without regard to principles of conflicts of law." Complaint, Ex. 3 § 10.10

## III.   REJECTION OF THE WATER AGREEMENTS

On June 22, 2020, Whiting filed its Complaint seeking a declaration that the Water Agreements do not create covenants that run with the land. Substantially concurrently therewith, Whiting filed a Motion for Entry of an Order Authorizing Rejection of the Water Agreements (the "Rejection Motion"), seeking authority to reject the Water Agreements under Bankruptcy Code section 365.

Whiting simultaneously seeks the relief requested in the Complaint and the Rejection Motion because bankruptcy courts have expressed a preference for the simultaneous adjudication of the issues raised in this adversary proceeding with a motion to reject the underlying executory contract. *In re Sabine Oil & Gas Corp.*, 547 B.R. 66, 73 (Bankr. S.D.N.Y. 2016), *aff'd*, 567 B.R. 869 (S.D.N.Y. 2017), *aff'd*, 734 F. App'x 64 (2d Cir. 2018) ("[B]ifurcating the motion to reject and further proceedings to finally resolve the underlying property law dispute is an inefficient use of judicial and private resources; it would have been far preferable for the Court to hear the two together.").

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a)—made applicable to this action under Federal Rule of Bankruptcy Procedure 7056—the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 56). The existence of some factual dispute will not defeat summary judgment; rather, the requirement is that no *genuine* issue of *material* fact exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Celotex Corp.*, 477 U.S. at 327. A genuine dispute of material fact exists only if a reasonable trier of fact could enter a verdict in favor of the non-moving party. *See Anderson*, 477 U.S. at 252; *Celotex Corp.*, 477 U.S. at 327 (holding that when a movant's evidence demonstrates the lack of a genuine issue the burden shifts to the opposing party to demonstrate the existence of a genuine issue for trial).

"An unambiguous contract is interpreted as a matter of law," and the Court "may grant summary judgment when a contract is unambiguous." *First Nat. Bank of Jackson v. Pursue Energy Corp.*, 799 F.2d 149, 151 (5th Cir. 1986) (citations omitted); *see also Lowell Staats Min. Co. v. Pioneer Uravan, Inc.*, 596 F. Supp. 1428, 1430 (D. Colo. 1984) ("Where, as here, the evidence of agreement between the parties consists of an unambiguous document, the determination of the meaning and effect of its provisions is a question of law for the Court, proper for resolution by summary judgment.").

## ARGUMENT

The Court should grant summary judgment and enter an order declaring that the Water Agreements do not create covenants that run with the land. Summary judgment is appropriate because there is no genuine issue of material fact. Based on the unambiguous terms of the Water Agreements, they fail to satisfy the elements necessary to create a covenant running with the land as a matter of Colorado law.

I.    **COUNTS I AND II OF THE COMPLAINT ARE RIPE FOR SUMMARY JUDGMENT BECAUSE PLAINTIFFS SEEK DECLARATORY JUDGMENT CONCERNING PURELY LEGAL ISSUES UNDER COLORADO LAW.**

Counts I and II of Whiting's Complaint are ripe for summary judgment because they concern issues of law. Each count seeks this Court's declaration that the Water Agreements do not create covenants that run with the land. Under the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

The substantive legal questions in this case are all governed by Colorado law. The Water Agreements expressly adopt Colorado law, without regard to principles of conflicts of law. *See* Complaint, Ex. 1 § 18.8; Ex. 3 § 10.10. Further, both agreements concern Colorado real property. *See* Complaint, Ex. 1, § 3.1; Ex. 3 § 1.4. Issues concerning Colorado real property interests are also governed by Colorado law.[3]

In Colorado, the interpretation of a written contract is a question of law for the court. *See Ad Two, Inc. v. City & County of Denver*, 9 P.3d 373 (Colo. 2000). The interpretation of whether a real covenant has been created is also a matter of law. *See Pulte Home Corp., v. Countryside Cmty. Ass'n, Inc.*, 382 P.3d 821, 826 (Colo. 2016) ("Covenants and other recorded instruments, like contracts, should be construed as a whole "seeking to harmonize and give effect to all provisions so that none will be rendered meaningless."). Accordingly, this Court can resolve any issues in the Complaint as a matter of law, and no factual dispute exists to preclude summary judgment. *See Celotex Corp.*, 477 U.S. at 327 ("The Federal Rules . . . have for almost 50 years

---

[3]    Colorado has adopted the Restatement (Second) Conflict of Laws approach, and would therefore apply Colorado laws in deciding real property covenant issues. *See, e.g.*, *Wood Bros. Homes v. Walker Adjustment Bureau*, 601 P.2d 1369, 1372 (Colo. 1979) (en banc); *Matter of Wimbush's Estate*, 587 P.2d 796, 799 (Colo. App. 1978).

authorized motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact.").

## II.   THE WATER AGREEMENTS DO NOT CREATE COVENANTS RUNNING WITH THE LAND UNDER COLORADO LAW.

The Water Agreements do not create covenants that run with the land. Colorado courts have stated that "[t]o create a real covenant, the parties must intend for the covenant to run with the land and bind their successors in interest, and the covenant must 'touch and concern' the land." *Reishus v. Bullmasters, LLC*, 2016 COA 82, ¶ 37, 409 P.3d 435, 440.[4] Privity of estate between the original covenanting parties at the time of the creation of the covenant (or "horizontal privity") is also required. *See Farmers' High Line Canal & Reservoir Co. v. New Hampshire Real Estate Co.*, 40 Colo. 467, 478, 92 P. 290, 293 (1907); *see also Taylor v. Melton*, 130 Colo. 280, 288, 274 P.2d 977, 982 (1954) (considering whether parties were in privity of estate for purposes of enforcing a covenant running with the land). The Water Agreements do not "touch and concern" the land, nor do they satisfy horizontal privity of estate. Accordingly, summary judgment is appropriate.

### A.   The Water Agreements Do Not "Touch and Concern" the Land.

The Water Agreements do not contain covenants that run with the land because the purported covenants do not "touch and concern" the land. In order for a covenant to run with the land under Colorado law, the covenant must "touch and concern" the land. *Farmers' High Line*



*Canal & Reservoir Co.*, 92 P. at 293. "A covenant touches and concerns the land if it 'closely relate[s] to the land, its use, or enjoyment." *Reishus*, 409 P.3d at 440 (quoting *Cloud*, 857 P.2d at 440); *Lookout Mountain Paradise Hills Homeowners' Ass'n v. Viewpoint Assocs.*, 867 P.2d 70, 74 (Colo. App. 1993); *see also Bigelow v. Nottingham*, 833 P.2d 764, 767 (Colo. App. 1991), *rev'd in part sub nom. on other grounds Haberl v. Bigelow*, 855 P.2d 1368 (Colo. 1993) ("The 'touch and concern' requirement is fulfilled when the covenant operates to benefit the physical use of the land.").

Colorado courts have not often had the need to apply the touch and concern element in any great detail. However, the close relationship test applied by Colorado courts is based on general real property principles, under which the touch and concern requirement turns on whether a covenant materially and directly affects the promisor's legal relationship ***to the land itself***. *See* Harry Bigelow, *The Content of Covenants in Leases*, 12 Mich. L. Rev. 639, 652 (1914).[5]

The Water Agreements do not contain covenants that run with the land because they do not ***closely relate*** to the land; *i.e.*, directly affect Whiting's legal interest in the land. ***First***, any covenants within the agreements are purely personal because they relate to produced water and freshwater acquired from a third party, which are personal property. ***Second***, the covenants in the Water Agreements do not directly affect Whiting's use of or legal right to the land.

---

[5]   Dean Harry Bigelow is a noted real property scholar and legal professor; indeed, "[t]he majority of courts and writers now accept the test for the 'touching and concerning of covenants' proposed by Dean Harry Bigelow, an eminent authority on the subject of covenants." 9 Powell Real Property (hereinafter, "Powell") § 60.04(3)(a) (citation omitted).

1.    *The Water Agreements Relate to Personal Property, Not Real Property, And Thus Do Not Affect Whiting's Interests in the Land.*

The Water Agreements do not burden or benefit the land because the covenants, if any, relate entirely to personal property. Under Colorado law, water in possession is a personal property right. The Water Agreements both concern water that has been reduced to personal possession and thus, concern only the use, enjoyment, or legal right to personal property. *Second*, Colorado law ***never*** considers water—even in or under the ground—to be real property.[6]

The purported covenants in the Water Agreements each relate to water that has been reduced to possession. Colorado law is clear that "[w]ater in possession is personal property." *W. End Irr. Co. v. Garvey*, 117 Colo. 109, 115, 184 P.2d 476, 479 (1947); *see also Brighton Ditch Co. v. City of Englewood*, 124 Colo. 366, 373, 237 P.2d 116, 120 (1951) ("[W]hen an appropriator has actually diverted water from the stream under his priority, the water he has taken is no longer a right, but a possession; it is not an interest in real estate, but personal property."). Specifically,

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

---

[6]    While Colorado courts have described the nature of the property right to water in various ways, the Colorado Supreme Court in *Navajo Dev. Co., Inc. v. Sanderson*, 655 P.2d 1374, 1377–78 (Colo. 1982) clarified that water rights are most accurately characterized as usufructuary rights, giving its holder the right to use and enjoy the property of another (in the case of water rights, the public) without impairing its substance, and "may be bought and sold without regard to the real property over which the water flows." *Id.* at 1378.

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████

The subject of the covenants in the Water Agreements relates only to personal property, so the covenants do not "touch and concern" the land. In *Sabine*, the Court found that a dedication of minerals "produced and saved" did not touch and concern the land because "the mineral dedications concern only minerals extracted from the ground, which indisputably constitute personal property, not real property, under Texas law." *In re Sabine Oil & Gas Corp.*, 550 B.R. 59, 66 (Bankr. S.D.N.Y. 2016), *aff'd*, 567 B.R. 869 (S.D.N.Y. 2017), *aff'd*, 734 F. App'x 64 (2d Cir. 2018).[7] Similarly, in *Alta Mesa*, this Court distinguished *Sabine*, explaining that *Sabine* focused on a fee mineral estate, whereas the relevant inquiry in *Alta Mesa* was the leasehold interest in oil and gas, which this Court determined were real property interests. *See In re Alta Mesa Res., Inc.*, 613 B.R. at 103. Applying Oklahoma law, this Court then concluded that the burdens and benefits of that case's covenants were logically connected to the leasehold interests in real property. *See id.* Pointedly, the inquiry was yet again on whether real or personal property was implicated. *See id.*

As in *Alta Mesa*, the court in *In re Badlands Energy, Inc.*, applying Utah law, found that the dedication in the gas processing agreement encompassed real property based on language readily distinguishable from the purported covenants here. *See* 608 B.R. 854, 869 (Bankr. D. Colo.

---

[7]   The dedications in *Sabine* went much further than those here—they purported to dedicate "the Leases" to the performance of the agreements. *See In re Sabine Oil & Gas Corp.*, 567 B.R. 869, 875 (S.D.N.Y. 2017), *aff'd*, 734 F. App'x 64 (2d Cir. 2018). But because *Sabine* "clearly disclaimed any intention to convey title to the leases" in the agreement, the Court nonetheless found that the agreements did not increase the gatherer's real property interests, "but rather granted them the merely contractual right to be the exclusive providers of certain services for gas and condensate produced in certain areas." *Id.* The Water Agreements do not purport to convey *any* interest in the Leases.

2019). In *Badlands*, the "Dedicated Reserves" provision dedicated to gatherer "*all Gas reserves in and under*, and all Gas owned by Producer and produced or delivered from [Badland's] Leases." *Id.* (emphasis in original). The court distinguished the covenant in *Sabine*, which related to condensate "produced and saved," finding that the "Dedicated Reserves" were interests in real property. *Id.* at 869. The same reasoning distinguishes the covenants at issue in the Water Agreements.[8]

Further, the Water Agreements could never involve real property rights. As a matter of black letter law, "[i]n Colorado, water rights *are separate from interests in land*." *WRWC, LLC v. City of Arvada*, 107 P.3d 1002, 1005 (Colo. App. 2004) (citing *Bd. of County Com'rs of County of Park v. Park County Sportsmen's Ranch, LLP*, 45 P.3d 693, 707 (Colo. 2002)). Unlike *Alta Mesa*, where the Court concluded the "gathering agreements touch and concern land because both the burden and benefits are logically connected to *Alta Mesa's leasehold interests in real property*," in Colorado "[t]he property rights of landowners *do not include* the right to control the use of water in the ground. Rather, the water belongs to the public, and the right to use it must be acquired from the state." *WWRC, LLC v. City of Arvada*, 107 P.3d at 1005 (emphasis added) (citing *Bd. of County Com'rs of County of Park*, 45 P.3d at 707-09); *Chatfield E. Well Co., Ltd. v. Chatfield E. Prop. Owners Ass'n*, 956 P.2d 1260, 1268 (Colo. 1998) ("All surface and ground water in Colorado is a public resource. . . . [N]o person 'owns' Colorado's public water resource as a result of land ownership"). Indeed, under "Colorado's constitution, statutes, and case precedent, neither surface water, nor ground water, nor the use rights thereto, nor the water-bearing capacity of natural formations belong to a landowner as a stick in the property rights bundle." *Bd.*

---

[8]   *Atla Mesa* and *Badlands* were decided under Oklahoma and Utah law, respectively. Accordingly, neither decision is binding on this Court in deciding whether the Water Agreements contain covenants running with the land under Colorado law.

*of County Com'rs of County of Park*, 45 P.3d at 707. Accordingly, in Colorado, no real property interest could be implicated by the Water Agreements because Whiting never has a real property interest in the water.

Thus, unlike oil or gas that are severed from the real property, the produced water described in the PWA and the freshwater described in the WCA are personal property before, during, and after use. In short, because the Water Agreements each relate exclusively to the use or sale of water, which is never real property under Colorado law, they do not "touch and concern" the land. *See, e.g.*, *In re Sabine Oil & Gas Corp.*, 550 B.R. at 81 (holding covenants that "concern only the Products produced from real property and affect only [] personal property rights" do not "touch and concern" the land).

      2.     *The Covenants Do Not Directly Affect Whiting's Legal Relations to Its Mineral Interests.*

The covenants in the Water Agreements fail for the additional and separate reason that they do not directly burden or benefit Whiting's mineral interests. *See* Bigelow, *The Content of Covenants in Leases*, 12 Mich. L. Rev. at 652 ("touch and concern" test turns on whether a covenant materially and directly affects the promisor's legal relationship to the land itself). The provisions in the Water Agreements that trigger the covenants relate to products (*i.e.*, water in personal possession), not the land (*i.e.*, Whiting's mineral interests)—the land itself remains unburdened. Further, with respect to the WCA, that agreement relates to water that BNN has sourced from some unspecified place (unconnected to Whiting) and thus could not burden Whiting's property interests.

a.      The covenant in the PWA does not directly affect Whiting's legal interest in the land.

Because the covenant in the PWA concerns only the ***products*** (*i.e.*, water in personal possession) of Whiting's oil and gas operations on the Dedicated Land, the covenant neither affects the value of nor lessens Whiting's legal relations to its interests in the real property. *See* Powell, *supra*, § 60.04[3][a] ("[I]f the covenantor's legal interest in land is rendered less valuable by the covenant's performance, then the burden of the covenant satisfies the requirement that the covenant touch and concern land."). Whiting retains complete control over its use and enjoyment of the Dedicated Land, and whether BNN receives ***any*** produced water from it. ████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████

In *Sabine*, the court held that the covenants did not touch and concern the land even though the covenants dedicated certain leases, which is a covenant far beyond the dedication that is present in the Water Agreements. *See* 550 B.R. at 81. As the *Sabine* court reasoned, the dedication covenants were merely in service of the agreements' overall goal—to supply gathering services to the provider:

> The covenants at issue concern only Sabine's interests in the produced "Products." The dedication covenants provide Nordheim and HPIP, as Sabine's service-providers, with the products needed to perform the contracted-for services. This is true even for the Debtors' dedication of certain leases in the HPIP Agreements inasmuch as that dedication is in furtherance of the overarching purpose of the contract, which is to provide product services to the Debtors. Similarly, the gathering fee compensates Nordheim for gathering those Products as part of its provision of those services. Contrary to HPIP's argument, the "dedication" does not constitute a burdening of the Debtors' property interests, but rather an identification of what property and products are the subject of the Agreement and will be made available to the gatherer in furtherance of the purposes

of the Agreements. Under Texas law, such covenants do not have a direct impact upon the real property from which those products were produced and thus do not "touch and concern" the land.

*Id.* The covenant at issue here dedicates even less— ████████████████████████

██████████████████████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████ The covenant does not purport

to dedicate any portion of the land, but only ███████████████████████████████

████████████ The covenants therefore do not have a "direct impact upon the real property," and

do not "touch and concern" the land. *In re Sabine Oil & Gas Corp.*, 550 B.R. at 81.

>    b.    The obligations in the WCA do not burden or benefit Whiting's interest in the land.

Whiting's obligations under the WCA also do not constitute covenants running with the land.[9] Under the WCA, Whiting contracted with BNN to purchase freshwater that BNN had already acquired, separate and apart from its relationship with Whiting or from Whiting's land. Complaint, Ex. 3, Recital B.

BNN's sale of its already-acquired freshwater to Whiting for Whiting's potential (but not required) use in its operations simply has no effect on Whiting's interest in its land. Indeed, under the WCA, Whiting agrees ███████████████████████████████████████

█████████████████████████████████████████████████████ As

---

[9] █████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
██████ █████████████████████████████████████████

further evidence that the WCA does not lessen Whiting's real property interests, the WCA explicitly provides ███████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████ Accordingly, the Water that is the subject of the alleged covenant may ultimately never be used on, or for the benefit of, the Dedicated Land, and can therefore provide no benefit to the land. *See Bigelow v. Nottingham*, 833 P.2d 764, 767 (Colo. App. 1991), *rev'd in part on other grounds sub nom. Haberl v. Bigelow*, 855 P.2d 1368 (Colo. 1993) ("The 'touch and concern' requirement is fulfilled when the covenant operates to benefit the physical use of the land."). ██████████████████████████████

████████████████████████████████████████████████████████████████

█████████████ *Id.*; *see also Beattie v. State ex rel. Grand River Dam Auth.*, 41 P.3d 377, 386 (Okla. 2002) (Opala, J., concurring) ("…the covenant must relate to the land. The covenant under review in this case *touches and concerns the land because it requires GRDA to perform a physical act upon the land* which directly benefits plaintiffs.") (emphasis added).

The WCA is, in essence, a requirements contract—Whiting must ████████████

████████████████████████████████████████████████████████████████

██████████████████████████ The Supreme Court of New York considered is a similar contract, which required a filling station owner to purchase "requirements of gasoline, oil or other petroleum products" from a single oil company or its distributors. *Bill Wolf Petroleum Corp. v. Chock Full of Power Gasoline Corp.*, 70 Misc. 2d 314, 315, 333 N.Y.S.2d 472, 475 (Sup. Ct. 1972), *aff'd as modified*, 41 A.D.2d 950, 344 N.Y.S.2d 30 (1973). In holding that the "covenant is not enforceable since the requisite 'touching' of the land" was not established, the Court found that "[t]he

requirements agreement in this case does not relate to the essential appearance, safety, maintenance, improvement, or usefulness of the land in any respect. The restriction of products sold to one brand, or to those provided by distributors of that brand, is irrelevant to the land. The conceivable 'touch' here is solely one of internal commercial usage." *Id.* at 318. So too here. It is "irrelevant to the land" where Whiting purchases its freshwater.

A case related to water is particularly helpful on this point. In 1976, the Court of Appeals of New York held that a water purchase covenant did not impose a covenant running with the land because it did not touch and concern the land. *Eagle Enterprises, Inc. v. Gross*, 39 N.Y.2d 505, 349 N.E.2d 816, 384 N.Y.S.2d 717 (N.Y. 1976). The covenant in question – established by a real estate developer – obligated all property owners in a subdivision to buy water from a well located on property retained by the developer for six months of every year. *Id.* at 506. A successor owner refused to take the water and challenged the covenant. *Id.* at 507. New York's highest court explained that whether a covenant touches and concerns the land "depend[s] upon the effect of the covenant on the legal rights which otherwise would flow from the ownership of land and which are connected with the land," and the water supply obligation "failed to substantially affect the ownership interest of the landowners in the Orchard Hill subdivision." *Id.* at 509. The obligation to receive water is, by its nature, akin to a "personal, contractual promise" to purchase a readily-available good "rather than a significant interest attaching to the property." *Id.* at 509-10.[10] Thus, unlike other real-estate connected covenants such as those for the development and use of roads and sewers, the covenant for the supply of water did not "relate in any significant degree to the

---

[10] The appellant, seeking to enforce the covenant, could not prove that the subdivision owners would be deprived of water or that the price of water would become prohibitive if the water purchase covenant was terminated. *Id.* As discussed in the Rejection Motion, Whiting has other available (and more economical) alternatives for obtaining freshwater and gathering and disposing of produced water.

ownership rights of respondent," and the evidence "was woefully insufficient to establish that [it] 'touches and concerns' the land." *Id.* at 510. Thus, the covenant did not run with the land and could not bind the challengers. The same conclusion applies to the WCA.

> c.  The covenants in the Water Agreements do not increase BNN's legal interest in the land.

Likewise, the covenants in the Water Agreements do not increase BNN's legal interest in the land. *See* Powell, supra, § 6.04[3][a] ("[C]ovenantee's legal interest in land is rendered more valuable by the covenant's performance, the benefit of the covenant also satisfies the requirement that the covenant touch and concern land."). The Water Agreements do not purport to convey any title or interests in the real property. Instead, the PWA dedicates ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Neither agreement provides that BNN will acquire any sort of "property interest." Far from increasing BNN's legal interest in the land, the Water Agreements "grant[] them the merely contract[ual] right to be the exclusive providers of certain services" and personal property (*i.e.*, freshwater) in connection with Whiting's operations on its real property. *In re Sabine Oil & Gas Corp.*, 567 B.R. at 875.

**B.  BNN and Whiting Are Not in Privity of Estate.**

The Water Agreements independently fail to create covenants that run with the land under Colorado law because Whiting and BNN are not in privity of estate. For a covenant to run with the land under Colorado law, privity of estate must exist. *See, e.g.*, *Taylor v. Melton*, 274 P.2d 977, 982 (Colo. 1954). This includes horizontal privity. Horizontal privity is a basic idea: that privity of estate—*i.e.*, transfer of a real property interest—must exist between the covenantor and the covenantee at the time the covenant was allegedly created. *See* 3 Tiffany Real Property § 851 (3d ed. 2015) (describing horizontal privity as "privity of estate between the covenantor and the

covenantee at the time the covenant was created").[11] The covenants that allegedly run with Whiting's mineral leases are not contained within a grant of a real property interest in those mineral leases, so there is no horizontal privity.

         1.     *Colorado Law Requires Privity of Estate between the Original Covenanting Parties for a Covenant to Run with the Land.*

The Colorado Supreme Court has explicitly required horizontal privity in an unbroken line of cases stretching back more than a century. The Colorado Supreme Court has said that "the requisite privity exists in the case of a covenant **by a grantor** to do or not to do something on land retained by him, adjoining that conveyed, so that one to whom the former is subsequently conveyed by him may be bound by the covenant." *Taylor*, 274 P.2d 982 (emphasis added) (quoting 3 Tiffany Real Prop. (3d ed.) pg. 449); *see also Farmers' High Line Canal & Reservoir Co.*, 92 P. at 293 ("[W]here there is the requisite privity of estate, and the covenant is connected with or concerns the land or estate **conveyed**, then a covenant imposing a burden will run with the land as readily as one conferring a benefit.") (citation omitted); *Hottell v. Farmers' Protective Ass'n*, 53 P. 327, 330 (Colo. 1898) (concluding a covenant running with the land was created, in part, because privity of estate was not denied). Colorado's intermediate courts also recognized this requirement long ago. *Fisk v. Cathcart*, 33 P. 1004, 1005 (Colo. App. 1893) ("Under these circumstances, there is no privity between him as a grantee from Beecher and the prior grantors subsequent to Parker which entitles him to maintain his suit upon his covenant."); *see also* Colo. Rev. Stat. § 38-30-121 ("Covenants of seisin, peaceable possession, freedom from encumbrances, and warranty **contained in any conveyance of real estate, or any interest therein**, shall run with the premises and inure to the benefit of all subsequent purchasers and encumbrancers.") (emphasis added).

---

[11]    The Colorado Supreme Court approvingly cited this exact section of this treatise for its explanation of privity. *See Taylor*, 274 P.2d at 982.

2.      *BNN Cannot Establish Horizontal Privity.*

Horizontal privity requires that covenants that allegedly run with the land be contained within a grant of an interest in ***the purportedly burdened estate*** in real property. *See Taylor*, 274 P.2d at 982; *accord In re Sabine Oil & Gas Corp.*, 734 F. App'x 64, 67 (2d Cir. 2018) (holding horizontal privity was not satisfied by conveyance of an easement in an agreement separate from the one purportedly creating the covenant); 9 Richard R. Powell, Powell on Real Property § 60.04(3)(c)(iii) ("'Horizontal privity' typically exists when the original covenanting parties make their covenant in connection with the conveyance of an estate in fee from one of the parties to the other. The covenant and the conveyance must be made at the same time . . . .").



---

<sup>12</sup> Complaint, Ex. 1, §§ 3.1, 3.3; Ex. 3, §§ 1.4, 1.8.



Complaint, Ex. 1, § 4.6(c); *see also* Ex. 3, § 1.1. This provision does not grant BNN any real

property right to Whiting's mineral interests. Instead, it merely states ███████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████ As a result, the covenants at issue are not contained in a grant of any real

property interest.

Even if this language purported to grant some right of co-usage to Whiting's right of ingress

and egress pursuant to its mineral leases, Whiting did not have the right to convey that right to

BNN as a matter of Colorado law. In Colorado, "a severed mineral owner has the right to use that

portion of the surface estate that is reasonably necessary to develop the severed mineral interest."

*Notch Mountain Corp.*, 898 P.2d at 556 (citing *Rocky Mountain Fuel Co. v. Heflin*, 366 P.2d 577,

580 (Colo. 1961)). Critically, "[t]hough the privilege to use the surface is recognized at law, this

right ***does not create an ownership interest*** in the surface estate . . . but merely a ***right of access***."

*Id.* (citing *Smith v. Moore*, 474 P.2d 794 (Colo. 1970) (emphasis added)). Whiting's surface access

rights are not ownership interests in the surface estate, they are incidental rights for the purpose of

developing the mineral estate through its mineral leasehold interests.

Colorado treats these incidental rights similarly to that of an implied easement appurtenant.

*See Gerrity Oil & Gas Corp. v. Magness*, 946 P.2d 913, 927 (Colo. 1997) (observing the

reasonable use limit on the right of access makes it comparable to "an implied easement, since it

entitles the holder to a limited right to use the land in order to reach and extract the minerals'") (citing Restatement (First) of Property § 450 (Am. Law Inst. 1944)). An easement appurtenant, and the dominant estate holder's reasonable right of access, "runs with [the burdened] land and *is incapable of existence* separate and apart from the particular land to which it is annexed." *Id.* (emphasis added) (citing 7 Thompson on Real Property § 60.06(f)(1) (Thomas ed. 1994)). In other words, the right of ingress and egress associated with Whiting's right to develop the mineral interests cannot be conveyed separately from the mineral interests themselves. As a result, Whiting lacked the power to convey the right of surface access without also conveying the dominant mineral leasehold estate itself, which Whiting did not do and did not have. *See id.*

To the extent these provisions do convey any real property interests (and they do not), the conveyance implicates only the surface estate and is not a grant of an interest in Whiting's allegedly burdened mineral leasehold estate. Colorado has long recognized that mineral and surface estates are "separate and distinct estate[s]." *Notch Mountain Corp. v. Elliott*, 898 P.2d 550, 556 (Colo. 1995) (citing *Radke v. Union Pac. R. Co.*, 334 P.2d 1077 (Colo. 1959)). There is no contention that Whiting owns an interest in anything other than a mineral leasehold estate. Accordingly, the rights of reasonable co-usage referenced in the above contractual provisions burden the surface and do not implicate Whiting's real property interests in the *mineral leasehold* estate.[13]

---

[13]   The surface access right resembles an implied easement appurtenant. *See Gerrity Oil & Gas Corp.*, 946 P.2d at 927 (observing the reasonable use limit on the right of access makes it comparable to "an implied easement, since it entitles the holder to a limited right to use the land in order to reach and extract the minerals") (citing Restatement (First) of Property § 450 (Am. Law Inst. 1944)). An easement appurtenant "runs with [the burdened] land and *is incapable of existence* separate and apart from the particular land to which it is annexed." *Id.* (emphasis added) (citing 7 Thompson on Real Property § 60.06(f)(1) (Thomas ed. 1994)). As with an easement appurtenant, Whiting lacked the power to convey the right of surface access without also conveying the dominant mineral leasehold estate itself—no reading of the Water Agreements suggests otherwise. *See id.*

---

Finally, to establish horizontal privity of estate, BNN must prove an interest in the land intended to be burdened by the purported covenant, but Whiting has not conveyed a grant of an interest in Whiting's mineral interests to BNN. *See In re Sabine Oil & Gas Corp.*, 734 F. App'x at 67 (holding horizontal privity was not satisfied by conveyance of any land involved in the covenant, but it must be an interest in the land intended to be burdened by purported covenant). Indeed, if BNN were to decide to drill into the mineral estate tomorrow, it would be liable for trespass.

The covenants at issue are not contained within an instrument that conveys a real property interest, and, thus, fail to create covenants that run with the land. Based on BNN's failure to satisfy this element, Whiting is entitled to summary judgment as a matter of law.

## CONCLUSION

Counts I and II of the Complaint are ripe for summary judgment as a matter of law. The Produced Water Gathering and Disposal Agreement and Water Commitment Agreement are exactly what they say they are—mere agreements to gather, dispose of, or purchase produced water or freshwater acquired from a third party (*i.e.*, personal property). The Water Agreements do not directly benefit the land, and contain no grant of an estate in real property. Thus, the contracts do not create covenants that run with the land under Colorado law, and the Court should enter a declaratory judgment so holding.

Houston, Texas
June 22, 2020

*/s/ Matthew D. Cavenaugh*

**JACKSON WALKER L.L.P.**
Matthew D. Cavenaugh (TX Bar No. 24062656)
Elizabeth C. Freeman (TX Bar No. 24009222)
Amy L. Baird (TX Bar No. 24044090)
Richard A. Howell (TX Bar No. 24056674)
Vienna F. Anaya (TX Bar No. 24091225)
1401 McKinney Street, Suite 1900
Houston, Texas 77010
Telephone:      (713) 752-4200
Facsimile:      (713) 752-4221

Email: mcavenaugh@jw.com
          efreeman@jw.com
          abaird@jw.com
          rahowell@jw.com
          vanaya@jw.com

### CERTIFICATE OF SERVICE

I certify that on June 22, 2020, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Matthew D. Cavenaugh*
Matthew D. Cavenaugh